UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CYNTHIA J. FRILOUX                          CIVIL ACTION

VERSUS                                      NUMBER: 07-6760

MICHAEL J. ASTRUE,                          SECTION: "S"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's application for Supplemental Security Income ("SSI") benefits based on disability. (Rec. docs. 26, 27).

Cynthia J. Friloux, plaintiff herein, filed the subject application for SSI benefits on October 28, 2004, alleging

disability as of July 1, 2003.[1]/ In a Disability Report that appears in the record, the conditions resulting in plaintiff's inability to work were identified as high blood pressure, diabetes, sleep apnea, a problematic disc, a pinched nerve, and hip and knee problems. (Tr. pp. 98-103). Plaintiff's application for SSI benefits was denied at the initial level of the Commissioner's administrative review process on January 13, 2005. (Tr. pp. 42-45). Pursuant to plaintiff's request, a hearing <u>de</u> <u>novo</u> before an Administrative Law Judge ("ALJ") went forward on March 8, 2006 at which plaintiff and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 46-47, 22-40). On September 28, 2006, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 10-18). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp.

---

[1]/ The application for SSI benefits is not contained within the administrative record that has been provided to the Court. Thus, the dates set forth in the Administrative Law Judge's ("ALJ") decision of September 28, 2006 will be utilized here. (Tr. p. 13). According to that decision, plaintiff had filed a previous application for SSI benefits on July 8, 2003 that was denied by the ALJ on May 19, 2004 and was apparently not appealed further. (<u>Id</u>.). Plaintiff's failure to do so made the ALJ's decision of May 19, 2004 the final, binding decision of the Commissioner, 20 C.F.R. §416.1455, and adjudicated plaintiff's entitlement to SSI benefits through the latter date.

4-6). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 28 U.S.C. §§405(g) and 1383(c)(3).

In her cross-motion for summary judgment, plaintiff essentially argues that the Commissioner's decision is not supported by substantial evidence. (Rec. doc. 26). Relevant to a resolution of that issue are the following findings made by the ALJ:

1.    [t]he claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(b) and 416.971 *et seq.*).

2.    [t]he claimant has the following combination of impairments: diabetes mellitus, high blood pressure, obesity and congestive heart failure, resolved are severe within Regulation 20 CFR 416.920(c) and <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985)).

3.    [t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    [t]he claimant is capable of performing past relevant work as an eligibility worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

5.    [t]he claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

(Tr. pp. 15, 16, 18).

Judicial review of the Commissioner's decision to deny SSI

benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking SSI benefits bears the burden of proving that she is disabled within the meaning of the Social Security Act.

4

Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §416.920, as follows:

1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. an individual who does not have a "severe impairment" will not be found to be disabled.

3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

4. if an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made.

5. if an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that she is disabled and must ultimately demonstrate that she is unable to perform the work that she has done in the past. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). In determining whether a claimant is capable of performing the work that she has done in the past, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. <u>Villa</u>, 895 F.2d at 1022; <u>Hollis v. Bowen</u>, 837 F.2d 1378, 1386 (5th Cir. 1988); <u>Epps v. Harris</u>, 624 F.2d 1267, 1274 (5th Cir. 1980). The demands of a claimant's past work can be based on descriptions of prior jobs as actually performed or as generally performed in the national economy. <u>Villa</u>, 895 F.2d at 1022 (citing <u>Jones v. Bowen</u>, 829 F.2d 524, 527 (5th Cir. 1987)). A finding that the claimant is disabled or is not disabled at any point in the five-step review process is conclusive and terminates the Commissioner's analysis. <u>Lovelace v. Bowen</u>, 813 F.2d 55, 58 (5th Cir. 1987).

At the time of the administrative hearing that was held on March 8, 2006, plaintiff was fifty-one years of age, had a college degree in sociology and substance abuse as well as having completed some masters-level work, and had past relevant work experience as a substitute teacher, a Census Department enumerator, a store clerk, and an eligibility worker for the food stamp program.

Plaintiff was unrepresented at the hearing and elected to proceed without assistance from an attorney despite being advised of her rights in that regard. She had not worked since the alleged onset date of July 1, 2003 except possibly for a one-week attempt at substitute teaching that was short-lived due to back problems. Plaintiff stood at 5'4" tall and weighed 247 pounds.

Elaborating on her physical problems, plaintiff first cited her back which limited her ability to walk or stand to five to ten minutes. She also suffered from sleep apnea which caused her to be short-winded. Plaintiff had reportedly been prescribed Albuterol in the past for possible asthma but had received no sleep apnea-specific treatment. Plaintiff's hypertension was under control with medication as was her diabetes, albeit to a lesser extent. She also had a history of a mastectomy on the right following a bout of breast cancer. Plaintiff additionally testified to suffering from depression and bilateral carpal tunnel syndrome with numbness but had not received treatment for either of those conditions. (Tr. pp. 24-36).

Robert Strader, a VE, was the second witness to take the stand. After testifying to his qualifications Strader proceeded to classify the exertional and skill demands of plaintiff's past work as follows: substitute teacher-light, semi-skilled; enumerator-light, unskilled; clerk-light, semi-skilled; and, eligibility

worker-sedentary, at the lower end of skilled. Although Strader was tendered to plaintiff for questioning, she chose instead to express her confusion and dissatisfaction with her unsuccessful attempts at securing Social Security benefits. (Tr. pp. 36-40).

The documentary evidence generated during the relevant time period[2]/ begins with treatment records from the Medical Center of Louisiana at New Orleans' ("MCLNO") Outpatient Department dated April 13, 2004 where plaintiff was seen for monitoring of her diabetes and hypertension which had been diagnosed in 1992 and 1994, respectively. Plaintiff's blood pressure was measured at 210/108 and she was described as "noncompliant". She also related a history of degenerative joint disease ("DJD"). The assessment was severe high blood pressure, uncontrolled type II diabetes mellitus, and severe obesity. Plaintiff was prescribed various medications and was to undergo a battery of tests before returning to MCLNO in four weeks. (Tr. pp. 147-148). After routine labwork was performed on June 1, 2004, plaintiff returned to MCLNO for follow-up of her breast cancer. The impression was no evidence of further disease and plaintiff was to have another mammogram and was to return in three months. (Tr. pp. 143-146).

Plaintiff was next seen at MCLNO on July 26, 2004 at which

---

[2]/ See note 1, supra.

time her blood pressure was recorded as 194/91 and her weight was 253 pounds. Complaints at the time included sinus headaches and sinus problems, knee pain, and pressure under the left breast. Amoxicillin and Benadryl were added to plaintiff's other prescribed medications which included Glucophage, Atenolol, Norvasc, Celebrex, and Hydrochlorotize. The diagnosis was diabetes and high blood pressure. (Tr. pp. 140-142). On September 22, 2004, plaintiff underwent a dobutamine stress echocardiogram at the MCLNO Cardiology Department in connection with complaints of shortness of breath and a positive history for congestive heart failure in addition to her other physical problems. The test itself was negative but it did produce dobutamine-induced arrhythmia. (Tr. pp. 137-138).

On November 20, 2004, plaintiff completed the Administration's pre-printed form denominated "Function Report-Adult" which elicited information about how her conditions limited her activities. Plaintiff described a daily routine as waking and seeing her niece off to school, taking her prescribed medications, walking fifteen to thirty minutes when she was able, going to the JPTA to use the computer when transportation was available, watching TV, and generally trying to stay as busy as she could. Plaintiff was limited in the amount of housework she could do and relied on her niece for some of the heavier duties. She still prepared meals for

herself and her brother, both of whom were on special diets, and she could still wash dishes and do light household chores and laundry. Plaintiff was unable to do a great deal of walking or standing for long periods of time so she typically used a shopping cart or a cane to ambulate. She occasionally needed help on the right side with dressing, bathing, and caring for her hair secondary to her breast cancer surgery. Plaintiff read a good deal, occasionally attended bible study classes and visited with relatives, and was able to handle her own limited finances. Plaintiff estimated that she could lift ten pounds at most; had significant limitations in kneeling, squatting, bending, and reaching; could only climb three or four steps; and, could walk only five to ten minutes before needing to stop and rest. Although she claimed to be able to follow written instructions very well when she concentrated, she was also known to fall asleep when someone was talking to her. Plaintiff wore glasses to read, used braces for her carpal tunnel syndrome as needed, and occasionally used a cane to ambulate. (Tr. pp. 115-122).

Plaintiff was consultatively evaluated by Dr. Steven Davidoff on December 15, 2004. Presenting problems included insulin-dependent diabetes, polyuria, and polydipsia, five to six episodes per night, and a hospitalization in May of 2004 for hypoglycemia; carpal tunnel syndrome with bilateral numbness and tingling;

psoriasis with extensive lesions on the dorsum of the hands and forearms; sleep apnea with a positive sleep study in the past; and, heart failure with five or six pillow orthopnea and intermittent leg swelling. Plaintiff could care for her personal needs; stand for fifteen minutes at one time and two to three hours per eight-hour time period; sit for thirty-five minutes to an hour; drive for thirty minutes; walk a half a block; lift ten pounds; and, do household chores including cooking, washing dishes, and grocery shopping.

On physical examination, plaintiff stood at 5'2" tall and was said to weigh 346 pounds, presumably a typographical error. Her blood pressure was measured at 168/100. Plaintiff ambulated well and was observed to get up and out of a chair and on and off the examination table without any difficulty. Dr. Davidoff noted that plaintiff walked with an assistive device but that it was not required for ambulation. Cervical spine range of motion was 40 degrees for flexion, extension, and lateral flexion and 80 degrees for right and left rotation. Lumbar range of motion was 90 degrees for flexion and 20 degrees for right and left lateral flexion. Range of motion of the hips, knees, and ankles was within normal limits. Straight leg raising was 60 degrees on the right and left and was 85 degrees on both sides in the sitting position. Plaintiff was able to lie straight back on the examination table

and could heel-and-toe walk. Motor strength was 5/5 in all four extremities. An EKG revealed a normal sinus rhythm and x-rays of the lumbar spine showed no evidence of DJD. X-rays of the chest demonstrated a CT ration of 18/30 consistent with cardiomegaly and a possible small left pleural effusion.

Based on the results of his examination and a review of the diagnostic testing, Dr. Davidoff's impression was diabetes with AV nicking but no peripheral neuropathy; sleep apnea with mild daytime somnolence and a reported positive sleep study; reported carpal tunnel but with a negative Tinel's sign; hypertension poorly controlled; a reported disc herniation but with normal lumbar and cervical spine range of motion; and, psoriasis with extensive psoriatic lesions. The doctor opined that plaintiff likely had a decreased ability to lift objects greater than ten to fifteen pounds and a decreased ability to walk distances greater than one block but no other decreased range of motion. Assistive devices were not required. There were no limitations in plaintiff's ability to sit, hear, speak, or handle objects. (Tr. pp. 151-155).

On January 12, 2005, an Administration medical consultant reviewed the medical records then extant and set forth his findings in a Physical Residual Functional Capacity Assessment form. There, the consultant found that plaintiff could lift twenty pounds occasionally, ten pounds frequently; could sit, stand, and/or walk

for six hours per eight-hour workday; had an unlimited ability to push and/or pull; could never climb a ladder/rope/scaffolds but could frequently perform the other enumerated postural maneuvers; had no manipulative, visual, or communicative limitations; and, was to avoid concentrated exposure to wetness and humidity but had no other environmental limitations. Essentially, the medical consultant concluded that plaintiff was capable of a limited range of light work. (Tr. pp. 156-163).

Plaintiff was seen at the St. Charles Community Health Center ("SCCHC") for an apparent physical on May 4, 2005 but the records from that date are not particularly legible. (Tr. pp. 194-195). Her hypertension and diabetes were monitored the following day at MCLNO. (Tr. p. 168). Plaintiff was next seen at the St. Charles Parish Hospital on September 29, 2005 for complaints of a dry throat and shortness of breath but without chest pain. Blood pressure was recorded as 211/108 and plaintiff was noted to have 2+ peripheral edema. Chest x-rays taken at the time revealed evidence of cardiomegaly and further views were requested when plaintiff could tolerate the studies better. The diagnosis was congestive heart failure. (Tr. pp. 169-185). Plaintiff returned to SCCHC on October 6, 2005 in connection with breathing difficulties of the previous few weeks. The shortness of breath was worse when lying down and was accompanied by a sticking sensation under the ribs.

Plaintiff also complained of chronic sinus drainage and feelings of depression and anxiousness. On this date, plaintiff's blood pressure was 187/91 and her weight was 246 pounds. The assessment was chronic rhinitis, asthma with an acute exacerbation, and type II diabetes. Plaintiff was prescribed Allegra and Albuterol and was to have chest x-rays taken. (Tr. pp. 203-205).

On October 13, 2005, plaintiff had her initial visit at the SCCHC Diabetic Clinic. She had no glucose monitoring strips secondary to financial difficulties, had chronic problems with back pain, and experienced a burning sensation in her feet at bedtime. Following testing, the assessment was benign essential hypertension and diabetes with complications. Plaintiff was to consult with an ophthalmologist and a podiatrist and was instructed on diabetes care and monitoring. She was prescribed Glucometer Strips and Capsaicin cream to be applied as needed for arthritis pain. (Tr. pp. 198-202). Plaintiff was next seen at SCCHC on October 19, 2005 for complaints of numbness and foot pain and a diabetic "tingle" to both feet, the left greater than the right, for the previous year and increasing in severity. Plaintiff's blood pressure was 154/94 and she weighed 248 pounds. The assessment included diabetes with peripheral neuropathy and tinea pedis. Medication was presicrbed. (Tr. p. 193).

Plaintiff returned to SCCHC on November 10, 2005 to obtain

14

recent test results and for ongoing monitoring of her shortness of breath. She complained of burning and aching sensations in the arms and legs which were worse at night and were causing difficulty sleeping. Plaintiff had a Glucometer but no test strips. The assessment on this date was congestive heart failure, benign essential hypertension, type I diabetes mellitus with complications, and diabetic peripheral neuropathy type I. Plaintiff was to use Elavil for the latter condition and was to get an echocardiogram. (Tr. pp. 190-192). Further follow-up at SCCHC went forward on December 5, 2005. Plaintiff continued to have shortness of breath and some tenderness in the upper chest. Plaintiff's blood pressure was down to 158/87 on this date and her weight was recorded as 250 pounds. The assessment was stable asthma and plaintiff was again ordered to submit to an echocardiogram of the heart. (Tr. pp. 188-189). Plaintiff failed to keep an appointment with the Opthamologic Clinic that was scheduled for December 29, 2005. (Tr. pp. 186-187).

By January 23, 2006, plaintiff was still complaining of shortness of breath and was generally not feeling well. She had not obtained the recommended chest x-ray and thus had increased shortness of breath with more congestion causing her to sit up at night and her legs to swell. Plaintiff's blood pressure had improved to 145/71 and her weight had reportedly decreased to 202.5

pounds. Respiration, rhythm, and depth were abnormal with airway movements and a decrease in breath sounds was heard. Neurologically, plaintiff had normal foot sensations. The assessment was congestive heart failure with plaintiff to use Lasix for one week and then obtain an EKG; benign essential hypertension; and, type II diabetes mellitus. Lasix and K-Dur were prescribed. (Tr. pp. 218-220). The requested chest x-rays were finally performed on January 25, 2006. Those studies revealed a borderline heart but no active pleuropulmonary disease. (Tr. p. 217).

Plaintiff was next seen by Dr. Kevin Joseph of SCCHC on February 1, 2006 with continued complaints of shortness of breath. X-rays had been taken but the echocardiogram had not been done. Plaintiff reported relief with Lasix but that she occasionally missed some meals. Medications at the time included Elavil, Capsaicin Cream, Humulin N, Albuterol, Allegra, Glucophage, Norvasc, Atenolol, and aspirin. Plaintiff's blood pressure was 145/75 but edema was present although the cardiovascular examination was normal. Lower extremity functions were normal and there were no sensory exam abnormalities. The assessment was congestive heart failure with a plan to increase Lasix, benign essential hypertension, and type I diabetes with complications. Plaintiff was advised to lose weight and was counseled on diet and diabetes management. (Tr. pp. 213-216). Refills on plaintiff's

various prescription medications were given on February 24, 2006. (Tr. p. 212).

On March 10, 2006, plaintiff returned to Dr. Joseph for follow-up care and to have her blood pressure checked. Plaintiff still had shortness of breath and her left leg sometimes became swollen even when elevated. She also reported urinating multiple times at night. Her blood pressure was 160/78 and her weight was 255 pounds. Edema was +2 on the left ankle and +1 on the right. The assessment was congestive heart failure with a plan to lower the dosage of Norvasc but to increase Atenolol, benign essential hypertension, and type I diabetes mellitus that was "doing well". (Tr. pp. 210-211). An echocardiogram of plaintiff's heart was ordered by Dr. Joseph on March 14, 2006 but there is no indication in the record that it was ever performed. (Tr. p. 207).

As noted earlier, plaintiff challenges the Commissioner's decision to deny SSI benefits on essentially one ground, namely, that the ALJ's decision was not supported by substantial evidence. For the reasons that follow, the Court believes that the ALJ's assessment of the evidence before him was a correct one.

In addressing plaintiff's broad challenge, the Court first notes that the responsibility of weighing the evidence and determining the credibility of witnesses' testimony and doctors' opinions lies with the ALJ in the first instance. <u>Carrier v.</u>

17

<u>Sullivan</u>, 944 F.2d 243, 247 (5th Cir. 1991); <u>Griego v. Sullivan</u>, 940 F.2d 942, 945 (5th Cir. 1991); <u>Wren v. Sullivan</u>, 925 F.2d 123, 129 (5th Cir. 1991); <u>Moore v. Sullivan</u>, 919 F.2d 901, 905 (5th Cir. 1990). In addition, the law is clear that the burden is upon the plaintiff to produce objective medical evidence of a condition that could reasonable be expected to produce the level of pain or other symptoms complained of. <u>Selders v. Sullivan</u>, 914 F.2d 614, 618 (5th Cir. 1990); <u>Harper v. Sullivan</u>, 887 F.2d 92, 96 (5th Cir. 1989). The ALJ must then weigh the plaintiff's testimony and subjective complaints against the objective medical evidence that has been produced. <u>Chaparro v. Bowen</u>, 815 F.2d 1008, 1010 (5th Cir. 1987)(citing <u>Jones</u>, 702 f.2d at 621 n.4). The evaluation of a plaintiff's subjective symptoms is a task particularly within the province of the ALJ for it was the ALJ who had an opportunity to observe the plaintiff, not the Court. <u>Harrell</u>, 826 F.2d at 480. The ALJ may discredit a plaintiff's subjective complaints of pain and other limitations if he carefully weighs the objective medical evidence and articulates his reasons for doing so. <u>Anderson v. Sullivan</u>, 887 F.2d 630, 633 (5th Cir. 1989)(citing <u>Abshire v. Brown</u>, 848 F.2d 638, 642 (5th Cir. 1988)).

In his written decision of September 28, 2006, the ALJ first concluded that plaintiff had not engaged in substantial gainful activity at any relevant time. (Tr. p. 15). Proceeding to step two

of the sequential analysis under §416.920, the ALJ then determined, based on a thorough review of the evidence before him, that plaintiff suffered from severe impairments in the form of diabetes mellitus, high blood pressure, obesity, and congestive heart failure. (Tr. pp. 15-16). However, the foregoing condition, while severe, did not satisfy the criteria of any of those set forth in the Listing of Impairments. (Tr. pp. 16-17). In doing so, the ALJ noted that plaintiff did not suffer from peripheral neuropathy demonstrated by persistent disorganization of motor function; that she had full use of her fingers, hands, and arms; that there was no loss of visual acuity due to plaintiff's diabetes; that she had a full range of motion and could heel/toe walk; and, that her hypertension had not caused any end organ damage. (Tr. p. 16).

Having proceeded past step three of the sequential analysis, the ALJ was then required to determine plaintiff's residual functional capacity which is defined as what a claimant can still do despite her limitations. 20 C.F.R. §§416.920(e), 416.945. Consistent with the medical findings of Dr. Davidoff, the ALJ determined that plaintiff was capable of performing work at the sedentary level. (Tr. pp. 16-17). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms complained of but that her statements concerning the intensity, duration, and limiting effects of her

symptoms were not entirely credible. (Id.). Plaintiff could ambulate well without an assistive device, could perform light household chores, prepare meals for herself and her family members, go grocery shopping, and attend bible study classes and visit with others. Plaintiff's ability to perform such activities is not indicative of someone who is unable to perform any work activity whatsoever. Anderson, 887 F.2d at 632.

After assessing plaintiff's residual functional capacity, the ALJ was then called upon to compare the demands of plaintiff's past work with her then-present capabilities to determine if prior jobs could be performed. 20 C.F.R. §416.920(e); Villa, 895 F.2d at 1022; Hollis, 837 F.2d at 1386. At the administrative hearing, the VE testified that plaintiff's past work as an eligibility worker for the food stamp program was performed at the sedentary level. The ALJ correctly found that the performance of this past work was not precluded by plaintiff's limitations. SSI benefits were thus denied at step four of the §416.920 analysis. (Tr. p. 18).

The mere existence of pain or the fact that an individual is unable to work without experiencing pain or other symptoms is not an automatic ground for obtaining Social Security benefits. Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985)(citing Jones, 702 F.2d at 621 n.4). Much of the medical evidence that was generated at the early stages of the relevant time period documents the

efforts of plaintiff's doctors to get her hypertension and diabetes under control. Those efforts produced gradual success and by the time of the administrative hearing plaintiff testified that her hypertension was controlled with medications as was her diabetes to a lesser degree. In her cross-motion for summary judgment, plaintiff indicates that she started kidney dialysis in June of 2007 and that she was thus going into renal failure prior to that time. No medical records of such treatment were admitted in the proceedings below, there is no notation in the records that were admitted that plaintiff was experiencing renal problems, and renal problems were not identified as a disabling condition in plaintiff's application for SSI benefits. See Pierre v. Sullivan, 884 F.2d 799, 802 (5th Cir. 1989). None of plaintiff's treating physicians even declared her to be disabled or limited her activities in any way. It is the plaintiff in a Social Security case who bears the burden of proving that she is unable to perform the work that she has done in the past. Bowen, 482 U.S. at 146 n.5, 107 S.Ct. 2294 n. 5. That burden has not been met here.

## RECOMMENDATION

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed

21

findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

New Orleans, Louisiana, this 14th day of December, 2009.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

22